IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRACY A. THOMAS,<br><br>      **Plaintiff,**<br><br>v.<br><br>ROB JEFFREYS,<br><br>      **Defendant.** | Case No. 19-cv-1196-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a motion for summary judgment on the issue of administrative exhaustion filed by Defendant Rob Jeffreys (Docs. 29 and 30). Plaintiff Tracy A. Thomas filed a response (Doc. 32) in opposition to the motion.

### BACKGROUND

On October 31, 2019, Plaintiff Tracy A. Thomas, who at the time was an inmate of the Illinois Department of Corrections ("IDOC"), filed his Complaint alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794–94e. Specifically, Thomas alleged that in September 2019 he was not able to access the law library at Pinckneyville Correctional Center ("Pinckneyville") because he was confined to a wheelchair and the elevator to the library did not work (Doc. 10, p. 2). Thomas's Complaint alleged the following single count:

  Count 1:  Defendants violated his rights under the ADA and/or RA
        when they denied him access to the law library.

Because individual defendants cannot be sued under the ADA and RA, the individual defendants were dismissed and Rob Jeffreys, the IDOC director, remained in the case in his official capacity only for purposes of Thomas's claim (Doc. 10, p. 3). *See* 42 U.S.C. § 12131(1)(b); *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 n. 2 (7th Cir. 2012) (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)).

Thomas acknowledges that the only grievance relevant to his claims was his emergency grievance dated September 8, 2019 (Doc. 30-1, pp. 34-36). That grievance complained that he had an appeal pending and needed access to the law library (*Id.* at p. 35). He put in three requests but did not receive a response (*Id.*). He asked to be called to the law library (*Id.*). On September 11, 2019, the warden expedited the grievance as an emergency (*Id.*). The grievance officer denied the grievance, noting that Thomas was scheduled for a library visit on September 17, 2019, he had been at the prison less than one month, and the prison was behind on library requests by two weeks (*Id.* at p. 36). On September 16, 2019, the chief administrative officer concurred with the decision (*Id.*). Two days later, Thomas appealed the grievance to the Administrative Review Board ("ARB"), where it was received on September 20, 2019 (*Id.* at pp. 34, 36). On September 23, 2019, the ARB found the grievance moot, noting that Thomas visited the law library on September 17, 2019 (*Id.* at p. 34).

Jeffreys argues that Thomas's September 8 grievance failed to exhaust the ADA and RA claim against him because it was filed before the date that Thomas was unable to access the law library and because the grievance failed to identify Jeffreys. He also argues

that he had no personal involvement with the ADA and RA violations and only concurred with the grievance.

In response, Thomas argues that the ARB and Jeffreys failed to properly investigate the grievance. If they had, they would have discovered that Thomas was unable to access the law library on September 17, 2019, because the elevator was not working. He also argues that he filed a grievance that was fully exhausted to the ARB and that Jeffreys saw the grievance at the ARB level. If he tried to file another grievance about his inability to access the law library on September 17, 2019, it would have been dismissed because an inmate can only file one grievance per issue.

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff

cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Thomas was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that

the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate

appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Because there are no disputes of material fact, an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), is not necessary. The only issue before the Court is whether the September 8 grievance served to exhaust Thomas's ADA and RA claim against Jeffreys.

The majority of Jeffreys's motion is dedicated to the argument that he was not personally involved in the alleged ADA and/or RA violations at Pinckneyville and thus he cannot be held liable for denying Thomas's grievance. But Jeffreys was not sued in his *individual* capacity for his personal involvement in the ADA violations. Instead, the Court added Jeffreys in his *official* capacity because Thomas cannot sue individuals under the ADA and/or RA in their individual capacities for their personal involvement. *Jaros*, 684 F.3d at 670 n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Because the proper defendant in an ADA and/or RA case is the director in his official capacity, Jeffreys is the proper defendant whether or not he was personally involved in the violations. Thus, to the extent Jeffreys argues that he should be granted summary judgment because he was not personally involved, his motion is denied.

Jeffreys devotes a scant two sentences in the argument section of his brief to Thomas's actual grievance. He argues that the grievance does not mention or describe Jeffreys, and it was filed before the date Thomas was unable to access the law library. As

previously noted, Jeffreys was added to the case in his official capacity as the proper defendant to an ADA and/or RA claim. The primary purpose of the grievance process is not to put *Jeffreys* on notice that he might be sued, but instead to inform prison officials of Thomas's problem. *Turley v. Rednour*, 729 F.3d 645, 649-650 (7th Cir. 2013)) (additional citations and quotations omitted). Here, the grievance informed officials that Thomas was unable to access the law library. Although the grievance officer noted that the prison was behind on library requests and that Thomas was scheduled for a library visit on September 17, 2019, by the time the grievance reached the ARB, Thomas had been prevented from accessing the law library due to the broken elevator (Doc. 30-1, pp. 34-36). The ARB even noted that Thomas visited the law library on September 17, 2019 (*Id.* at p. 34). If the ARB had properly investigated the grievance, as Thomas argues in his response, it would have learned that Thomas was unable to access the law library due to the broken elevator. Thus, the grievance provided officials with enough information from which they could have learned of the broken elevator. Furthermore, Thomas's access to the law library was an administrative decision. Nothing in the record suggests Thomas was aware of who was in charge of such a decision, nor would he be aware that the proper official for an ADA and/or RA violation was the director. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) ("[Plaintiff] complained about an administrative decision—the cancellation of AHI services—and it belies reason to suggest that prison administrators at Lawrence were unaware of who was responsible for that decision.").

Finally, Jeffreys notes that Thomas's grievance was filed before he was unable to access the law library on September 17, 2019. But his Complaint is not limited to the single

date of September 17, 2019. Instead, the Court's threshold order noted that Thomas was unable to access the law library on that particular date because the elevator had not worked for some time and he continued to be denied access to the law library due to the issues with the elevator (Doc. 10, p. 2). Further, by the time the ARB reviewed the grievance on September 23, 2019, Thomas had attempted to visit the law library on September 17, 2019, which the ARB noted in its response. As Thomas had already grieved the issue regarding his access to the law library, he was not required to resubmit a grievance when he was ultimately unable to access the library on September 17, 2019. *Turley*, 729 F.3d at 650 ("In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue."). Thus, the Court finds that the grievance provided prison officials with enough information to properly grieve Thomas's claims.

## CONCLUSION

For the reasons set forth above, Rob Jeffreys's motion for summary judgment (Docs. 29 and 30) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:   March 24, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**